## Goldfon *v.* Allegheny County.

*Extradition—Expenses chargeable to a county—" State " defined.*

The word " state," as used in section 1 of the Criminal Code of March 31, 1860, P. L. 427, providing for the allowance of expenses of extradition which shall be paid out of the treasury of the county where the offense is charged to have been committed, clearly refers to states of the Union; it does not include a foreign county or province; hence it follows that no extradition expenses can be collected from a county for a fugitive transported into said county from Canada.

Argued May 10, 1900.    Appeal, No. 110, April T., 1900, by plaintiff, in suit of Morris Goldfon against the County of Allegheny, from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1899, No. 399, in favor of defendant non obstante veredicto. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.    Affirmed.    Opinion by BEAVER, J.

Assumpsit to recover expenses incurred in the extradition of Louis Levy from Canada.

Morris Goldfon, the plaintiff in the case, is the officer named in a warrant of extradition issued by the president of the United States for the removal of a criminal from the Dominion of Canada to the county of Allegheny and state of Pennsylvania. This warrant of extradition was issued in the ordinary and regular course for the issuance of such papers, begun by a petition to the governor of Pennsylvania, with the approval of the district attorney of Allegheny county. The criminal in this case had been indicted and convicted of the crime of per-

76          GOLDFON *v.* ALLEGHENY CO.

Statement of Facts—Opinion of the Court. [14 Pa. Superior Ct.

jury. Being under bail and before sentence, he fled to Canada. His bondsman was the moving spirit in the effort for his return. Upon his apprehension the criminal engaged able counsel and prepared for a vigorous resistance to the attempt for his removal. Goldfon, the person named in the warrant, engaged counsel to help secure the surrender of the criminal. He was finally surrendered to Goldfon, by him returned to Allegheny county, and by the court was sentenced and imprisoned. The county having refused to pay the bill presented by Goldfon for his expenses, and fees for the attorneys engaged by him, suit was brought. Of the attorneys' bill of $1,000, but $100 had been paid by Goldfon, leaving $900 still due. It was, however, agreed by the attorneys for the county that this bill should be treated as if paid, and the whole question be tried in the one case. The jury found for the attorneys $500, and for Goldfon for his expenses $687, subject to the question of law reserved by the court.

Verdict for plaintiff in which judgment was entered in favor of defendant non obstante veredicto. Plaintiff appealed.

*Error assigned* was in not entering judgment for plaintiff on the verdict.

*Samuel B. Griffith* and *C. C. Brock*, for appellant.

*N. S. Williams*, for appellee.—In criminal cases the county is not liable without express legislation : Brinker v. Northampton Co., 5 Pa. Dist. Rep. 686 ; Wayne County v. Waller, 90 Pa. 105; Franklin Co. v. Conrad, 36 Pa. 317.

And in this case, outside of the Act of March 31, 1860, P. L. 427, which, it is submitted, does not apply to extradition from foreign counties, no legislative authority was shown.

It has been held that in extradition cases between states, the only expenses to be allowed the agent, under the act of March 31, 1860, is the actual expense of going and returning with the prisoner, a mere nominal sum : Douthett v. Lawrence County, 4 Pa. Dist. Rep. 608.

OPINION BY BEAVER, J., July 26, 1900 :
Plaintiff claims in his statement for the payment by the

county of Allegheny of expenses incurred in securing extradition and returning to Allegheny county for sentence, after conviction of the crime of perjury, Louis Levy, who had "fled from the state of Pennsylvania to the dominion of Canada, a fugitive from the justice of the state of Pennsylvania."

Wagman, the bail of Levy, petitioned the governor of Pennsylvania for a requisition "directed to the attorney general of province of Canada for the arrest and delivery of the said fugitive," alleging that "he fled from the state of Pennsylvania and is now, as your petitioner verily believes, in the province of Canada, a fugitive from the justice of this state." Accompanying the petition is the certificate of the district attorney of Allegheny county, who therein certifies "that said fugitive is now under arrest in the city of Montreal, province of Canada."

It is conceded that the right to recover in this case, if there be any, is found only in section 1, Act of March 31, 1860, P. L. 427. Assuming that a requisition by the governor, when enforced by the request of the federal government to the authorities of a foreign country, is a necessary part of the process referred to in the proviso to the section as "issued on behalf of the commonwealth" the law limits the cases in which the expenses "shall be paid out of the treasury of the county where the offense is charged to have been committed," to "transporting any person charged with having committed any offense in this state from another state into this state for trial, or for conveying any person after conviction to the penitentiary." The court below entered judgment for the defendant, non obstante veredicto, upon the ground that the fugitive was not transported from another state into this state within the meaning of the act, holding that "the word state in the act clearly refers to states of the Union which have a right to deal with one another in such matters." In this view we fully concur. It is one of the primary rules of construction that the words of a statute are to be taken in their common and ordinary meaning, and no one reading this statute, without reference to a particular case, would for a moment imagine that the expression "from another state," referred to any other than a state similar to this state.

It is somewhat significant, as pointed out by the counsel for

the appellant, that the word commonwealth used in the preceding part of the section is changed here, but its significance is wholly due to the fact that there are among the states of the United States very few which style themselves commonwealths, but all are embraced in the general term states. Indeed, in the proviso itself commonwealth and state, as is generally the case, are used as synonymous. It is true that a definition of the word state may be found which would embrace the government of Canada, but it is significant that not once in the pleadings in this case, or in the petition to the governor for a requisition or the certificate of the district attorney, is it called a state, but is always referred to as the dominion or province of Canada. If the legislature had intended to include foreign countries within the provisions of the act, it would undoubtedly have said so. It is easy to conceive of a case in which, in the interest of the public welfare and the due administration of justice, there should be authority to pay out of the county treasury the expenses of extradition from a foreign country and the county made liable for the payment of the same, but we cannot find either authority or liability to pay in the act of assembly referred to. The general authority of the county commissioners as the financial officers of the county to make a special contract for such services is not here involved. It may be that legislation upon this subject is necessary, but, if had, it should be carefully guarded, as the facts of this case clearly prove, and should be enacted by legislative and not judicial authority.

Having reached this conclusion, it is unnecessary to consider the other questions as to liability for attorneys' services in securing extradition. Believing that the court below properly interpreted the proviso to the first section of the criminal code of 1860, the judgment is affirmed.